IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Mineral Park, Inc., et al.,[1] | ) | Case No.: 14-11996 (___) |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |

**MOTION OF DEBTOR MINERAL PARK, INC. PURSUANT TO 11 U.S.C.
§§ 105(A) AND 363(B) TO EMPLOY AND RETAIN FTI CONSULTING, INC.
TO PROVIDE A CHIEF RESTRUCTURING OFFICER, ADDITIONAL PERSONNEL,
AND FINANCIAL ADVISORY AND RESTRUCTURING-RELATED SERVICES FOR
SUCH DEBTOR, _NUNC PRO TUNC_ AS OF THE PETITION DATE**

Debtor Mineral Park, Inc. ("Mineral Park" or the "Debtor"), one of the above-captioned debtors and debtors in possession, hereby moves the Court for the entry of an order pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"): (a) authorizing the Debtor to retain FTI Consulting, Inc. (including its subsidiaries and its subsidiaries' agents and independent contractors, "FTI"), pursuant to the terms and conditions of that certain letter agreement between FTI and the Debtor dated September 24, 2013, as amended (the "Engagement Letter"), as further modified herein, to (i) provide David J. Beckman ("Mr. Beckman") as Chief Restructuring Officer ("CRO") of the Debtor, (ii) provide Paul Hansen ("Mr. Hansen") as Assistant Chief Restructuring Officer ("Assistant CRO"), (iii) provide additional personnel (the "Additional Personnel"), (iv) provide financial advisory and restructuring-related services to the Debtor, in each instance _nunc pro tunc_ to the commencement

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Mineral Park, Inc. (6900); Bluefish Energy Corporation (6843); Mercator Mineral Park Holdings Ltd. (3520); and Lodestrike Resources Ltd. (7923). The mailing address for Debtors Mineral Park, Inc. and Bluefish Energy Corporation is 8275 N. Mineral Park Road, Golden Valley AZ 86413. The mailing address for Debtors Mercator Mineral Park Holdings Ltd. and Lodestrike Resources Ltd. is #1050 - 625 Howe Street, Vancouver BC V6C 2T6.

of this case (the "Petition Date"); and (v) granting certain related relief. A copy of the Engagement Letter, along with an addendum thereto, is attached hereto as **Exhibit A**. In support of this Motion, the Debtor relies upon the declaration of Mr. Beckman, a Senior Managing Director of FTI (the "Beckman Declaration"), attached hereto as **Exhibit B** and incorporated herein by reference, and respectfully represents as follows:

## Background

1. On the Petition Date, the Debtor and certain of its affiliates filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its properties as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner in these cases, and no official committee has yet been appointed by the Office of the United States Trustee.

2. The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, are set forth in detail in the *Declaration of Marc S. LeBlanc in Support of First Day Motions* filed concurrently herewith and fully incorporated herein by reference.

## Jurisdiction

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. § 1409.

## FTI's Engagement and Qualifications

4. Under the circumstances, the Debtor has determined that obtaining the ongoing services of a CRO and other personnel with turnaround and chapter 11 experience will substantially enhance its ability to (a) operate and meet its administrative obligations in these

cases and (b) preserve and maximize the value of its assets pending any sale. As such, the Debtor has chosen to utilize FTI personnel as appropriate and has appointed Mr. Beckman of FTI to the position of CRO, and Mr. Hansen to the position of Assistant CRO. Specifically, as set forth in the Engagement Letter, the Debtor retained FTI and Mr. Beckman as CRO and Mr. Hansen as Assistant CRO effective September 1, 2013. Pursuant to an addendum that became effective on August 1, 2014, the CRO's engagement was broadened to include responsibility for the Debtor's sale process and oversight, in conjunction with the company's management, of the day to day operations of the Debtor's business, subject in all instances to the oversight and control of the Debtor's board of directors.

5. FTI has extensive experience in providing restructuring services in and out of chapter 11 proceedings and has an excellent reputation for the services it has rendered on behalf of debtors and creditors throughout the United States. Among many other examples, FTI has provided (a) restructuring and turnaround advisory services to clients including NewPage Corporation; Chrysler Financial Services Americas LLC; Cadence Innovation LLC; Performance Transportation, Inc.; and Chrysler Motors LLC; and (b) financial advisory services to the lenders or unsecured creditors of such companies as General Motors Corporation; Coach America Holdings Inc.; and Swift Transportation Inc.

6. Further, as a result of prepetition work performed on behalf of the Debtor, FTI has acquired significant knowledge of the Debtor and its business and is now familiar with the Debtor's financial affairs, debt structure, operations and related matters. Likewise, in providing prepetition services to the Debtor since on or about September 1, 2013, FTI's professionals have worked closely with the Debtor's management and other advisors.

Accordingly, FTI has developed relevant experience regarding the Debtor that will assist it in providing effective and efficient services to the Debtor in these cases.

7. As such, the Debtor believes that FTI is well qualified and able to advise the Debtor in a cost-effective, efficient and timely manner. The Debtor has been advised by FTI that it will endeavor to coordinate with the other professionals retained in these bankruptcy cases to eliminate unnecessary duplication or overlap of work. Therefore, the Debtor submits that the retention and employment of FTI is in the best interests of its estates, creditors and other stakeholders in these cases.

### Services to Be Provided by FTI

8. Consistent with the terms of the Engagement Letter, Mr. Beckman as CRO, Mr. Hansen as Assistant CRO and the Additional Personnel are charged with assisting the Debtor with its various operational, administrative and financial needs arising in connection with these chapter 11 cases. More specifically, but without limitation, the anticipated services include the following:

   (a) providing Mr. Beckman to serve as Chief Restructuring Officer and Mr. Hansen to serve as Assistant Chief Restructuring Officer to report to the Debtor's Directors on the progress of these cases, but not to be a member of any of the Debtor's Board of Directors;

   (b) assisting the Debtor in the preparation of financial disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statements of Financial Affairs and Monthly Operating Reports;

   (c) assisting the Debtor with monitoring, reporting and providing other analyses in connection with the Debtor's postpetition financing, including, but not limited to, preparation for hearings regarding use of cash collateral;

   (d) assisting with the monitoring and implementation of cash management procedures;

(e) advising and assisting the Debtor, the Debtor's legal counsel and other professionals in responding to third party due diligence requests, including with respect to potential sales of the Debtor's assets.

(f) assisting with the identification of executory contracts and unexpired leases and analyses relating to the potential assumption, modification or rejection of these agreements;

(g) assisting in the evaluation of operational issues and the identification of areas of potential cost savings, including overhead and operating expense reductions and efficiency improvements;

(h) assisting in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts and analysis of proposed transactions for which Court approval is sought;

(i) attending meetings and assisting in communications with parties in interest in these cases and their professionals, including the Debtor's secured lenders, any official committee(s) appointed in these chapter 11 cases and the Office of the United States Trustee (the "U.S. Trustee");

(j) analyzing claims filed or asserted by creditors;

(k) assisting in the preparation of information and analysis necessary for the confirmation of any chapter 11 plan in these cases;

(l) assisting in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

(m) providing litigation advisory services with respect to accounting and tax matters, along with expert witness testimony on case related issues as required by the Debtor; and,

(n) rendering such other general business consulting or such other assistance as Debtor's management or counsel may deem necessary and which are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in these cases.

9. Pursuant an addendum to the Engagement Letter that became effective on August 1, 2014, the scope of FTI's services was expanded to include the following additional services that FTI will also perform postpetition:

(a) Responsibility for the management of the marketing and sale of the Debtor or the Debtor's assets on a standalone basis, including, without limitation, (i) the selection and engagement of a financial advisor reasonably acceptable to the Debtor and its senior lenders in connection with such sales process and (ii) providing information to such lenders regarding, among other things, status of said sales process (which information the Debtor authorizes FTI to provide to the lenders; and

(b) Oversight, in conjunction with the Debtor's management, of the day to day operations of the Debtor's business.

Notwithstanding the foregoing, in the exercise of the foregoing rights and responsibilities, FTI shall, at all times and in all instances, remain subject to the oversight and control of the Debtor's board of directors, and nothing herein shall be deemed to modify or limit the rights and responsibilities of the board of directors of the Debtor, as governed by applicable law.

10. Upon the Court's approval of the proposed retention, Mr. Beckman and Mr. Hansen will continue to report to, and to act under the direction, control and guidance of, the Debtor's directors, subject to removal and/or termination thereby.

**FTI's Fees — Fixed Monthly Rates (Plus Hourly Testimony Charges)**

11. As set forth in the Engagement Letter, for FTI's services rendered in connection with the restructuring advisory function of the scope of services, the Debtor has agreed to compensate FTI by a fixed monthly fee, payable monthly in advance, of $200,000.00. FTI will receive an additional one time non-refundable advisory fee of $100,000.00 for FTI's efforts related to the Debtor seeking bankruptcy court protection.

12. In addition to the fees outlined above, FTI will bill the Debtor monthly for reimbursement of reasonable direct expenses incurred on the Debtor's behalf during the engagement. Direct expenses include reasonable and customary out-of-pocket expenses arising directly from the engagement, such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement.

13.     Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with the Debtor's bankruptcy proceedings or any other judicial or administrative proceedings on behalf of the Debtor, FTI will be compensated at its regular hourly rates and reimbursed for reasonable allocated direct expenses (including counsel fees) with respect thereto at the hourly rates listed below:

| | |
|---|---|
| Senior Managing Directors | $790-$925 |
| Directors/Managing Directors | $570-$755 |
| Consultants/Senior Consultants | $290-$540 |
| Administrative/Paraprofessionals | $120-$235 |

14.     Notwithstanding anything to the contrary in the Engagement Letter, FTI is not seeking any "success," deferred, "back end" or similar fees from the Debtor for this engagement, nor is FTI seeking hourly rates for any of its services (all of which services will be included in the monthly fixed fees) except as noted in paragraph 13 above.

15.     Because FTI is not being employed as a professional under section 327 of the Bankruptcy Code, it will not be submitting regular fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. FTI will, however, submit certain reports described below.

### No Retainer – No Prepetition Obligations

16.     FTI is not holding a retainer in connection with this engagement and has no outstanding obligations owed by the Debtor as of the Petition Date.

### Reporting Requirements

17.     To maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel to assist the Debtor under section 363 of the Bankruptcy Code (sometimes referred to as the "Jay Alix Protocol") (the "<u>Protocol</u>"), FTI intends to file with the Court and serve on the Debtor, the U.S. Trustee and any statutory committee(s) appointed in

these cases (collectively, the "Committee" and, together with the Debtor and the U.S. Trustee, the "Notice Parties") a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report would include the names and functions filled by all FTI personnel assigned to this engagement. The Staffing Report (and FTI's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

18.     In addition, FTI will file with this Court, and serve upon the Notice Parties, reports of compensation earned and expenses (the "Compensation Reports") incurred on at least a quarterly basis. The Compensation Reports would summarize the service provided, identify the compensation earned, itemize expenses incurred and provide for an objection period. All such compensation would be subject to review by this Court if an objection is filed.

### Indemnification and Liability Limitation Provisions

19.     The Engagement Letter contains standard indemnification and limitation of liability language with respect to FTI's services. Notwithstanding any provisions of the Engagement Letter to the contrary, in accordance with the Protocol, FTI has agreed otherwise, as set forth below.

20.     With respect to Mr. Beckman in his capacity as CRO and Mr. Hansen as Assistant CRO, the Debtor shall indemnify them on the same terms as provided to the Debtor's other officers and directors under the Debtor's by-laws and applicable state law, and pursuant to available insurance coverage under the Debtor's directors' and officers' insurance policies.

21.     With respect to the Additional Personnel, the Debtor shall have no obligation to indemnify FTI or to provide contribution or reimbursement to FTI for any claim or expense that is either (a) judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of FTI; or (b) settled prior to a judicial determination as to FTI's willful misconduct, gross negligence, bad faith or self-dealing but

determined by the Court, after notice and a hearing, to be a claim or expense for which FTI should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter.

22. If FTI believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification with respect to the Additional Personnel, including without limitation the advancement of defense costs, before the earlier of (a) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (b) the entry of an order closing, dismissing or converting these chapter 11 cases, FTI must file an application to this Court seeking such payment, and the Debtor may not pay any such amounts to FTI before the entry of an order by this Court approving the payment; *provided, however*, that the foregoing is intended only to specify the period of time during which the Court shall have jurisdiction over any request for indemnification by FTI, and is not a provision limiting the duration of the Debtor's obligation to indemnify FTI.

23. Finally, notwithstanding any provisions of the Engagement Letter to the contrary, FTI has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court or (if the reference is withdrawn) the District Court for the District of Delaware to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to FTI's engagement in these cases.

### Legal Basis for Relief Requested

**A.      The Debtor Has Exercised Its Sound and Prudent Business Judgment**

24. Section 363 of the Bankruptcy Code provides that, after notice and a hearing, a debtor may use property of the estate other than in the ordinary course of business.

and maximize the value of their estates. The Debtor requires the assistance of qualified and experienced personnel to assist in these matters. Thus, the Debtor believes that it would be in its best interests and in the best interests of its estate, creditors and other parties-in-interest for the Court to grant the relief requested herein, with such relief being deemed effective as of the Petition Date.

27. The Debtor believes that FTI's fee structure is fair and reasonable in light of the type of services being provided and is comparable to those generally charged by firms of similar stature to FTI for comparable engagements. In addition, given the numerous issues FTI may be required to address in these cases, the intense effort expected to be required over certain periods of time (particularly at the outset of these cases), FTI's commitment to the variable level of time and effort necessary to address all such related issues as they arise and the market prices for FTI's services for engagements of this nature in an out-of-court context, the Debtor believes that the FTI fee arrangement is fair and reasonable.

B.   **The Proposed Retention Comports with the Bankruptcy Code and the Protocol**

28. FTI will provide the Notice Parties with the Staffing Reports and the Compensation Reports. Because the Debtor is seeking to retain FTI and a CRO pursuant to section 363 of the Bankruptcy Code and not under section 327 of the Bankruptcy Code, FTI is not subject to the compensation requirements of sections 330 and 331 of the Bankruptcy Code. Therefore, the Debtor requested that fees and expenses of FTI incurred in the performance of the above-described services be treated as an administrative expense of the Debtor's chapter 11 estate and be paid by the Debtor in the ordinary course of business, without the need for FTI to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses, other than those described above.

29. In addition, because the Debtor is not seeking to retain FTI as a professional under section 327 of the Bankruptcy Code, there is no requirement that FTI, Mr. Beckman, Mr. Hansen or any of the Additional Personnel be disinterested. Nevertheless, to the best of the Debtor's knowledge, information and belief based on the Beckman Declaration, FTI does not have or represent any interest adverse to the Debtor's estate or any class of creditor or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in, parties in interest in these cases, or for any other reason. Additional information about FTI's connections to parties in interest in these cases is described in the Beckman Declaration.

C.  **The Court Also May Grant the Requested Relief Pursuant to Section 105 of the Bankruptcy Code**

30. Additionally, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide ample authority for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." *See* 11 U.S.C. § 105(a); *see also United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code."); *Adelphia Communications Corp. v. The American Channel (In re Adelphia Communications Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process.").

## No Prior Request

31. No prior request for the relief sought in this Motion has been made to this or any other Court in connection with these chapter 11 cases.

## Notice

32. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) the Debtor's principal secured lenders; (c) the creditors listed in the consolidated list of creditors holding 35 largest unsecured claims; and (d) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit C**, (a) granting the relief sought herein and (b) granting to the Debtor such other and further relief as the Court may deem proper.

Dated: August 25, 2014

Respectfully submitted,

Mineral Park, Inc.

_____
Marc S. LeBlanc
Corporate Secrtary