IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Mineral Park, Inc., et al.,[1] | ) | Case No.: 14-11996 (KJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

Related Docket No. 313

### ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF CERTAIN ASSETS OF DEBTORS MINERAL PARK, INC. AND BLUEFISH ENERGY CORPORATION OUTSIDE THE ORDINARY COURSE OF BUSINESS, (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(b), (f) AND (m) OF THE BANKRUPTCY CODE, AND (C) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of Mineral Park, Inc. ("Mineral Park") and Bluefish

Energy Corporation ("Bluefish"), two of the debtors and debtors in possession (Mineral Park and

Bluefish are together referenced herein as the "Debtors") in the above-captioned proceedings, for

the entry of an order pursuant to sections 102, 105, 363, 365, 1107, and 1108 of title 11 of the

United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1(b), 6004-1 and

9006-1of the local rules of this Court (the "Local Rules") (i) approving that certain Asset

Purchase Agreement (the "Agreement") between the Debtors, as sellers, and Origin Mining

Corporation, LLC, as buyer (the "Buyer"), attached as Exhibit A to the Motion; (ii) authorizing

---

[1] The debtors in these jointly administered proceedings and the last four digits of their respective federal taxpayer identification numbers are as follows: Mineral Park, Inc. (6900); Bluefish Energy Corporation (6843); Mercator Mineral Park Holdings Ltd. (3520); and Lodestrike Resources Ltd. (7923). The mailing address for Debtors Mineral Park, Inc. and Bluefish Energy Corporation is 8275 N. Mineral Park Road, Golden Valley AZ 86413. The mailing address for Debtors Mercator Mineral Park Holdings Ltd. and Lodestrike Resources Ltd. is #1050 - 625 Howe Street, Vancouver BC V6C 2T6.

the sale of certain assets of the Debtors, as described in the Motion (the "Assets"), to the Buyer

in accordance with the Agreement and free and clear of all liens, claims, encumbrances and

interests (the "Sale");[2] (iii) authorizing the assumption and assignment of certain executory

contracts and unexpired leases in connection with the Sale; and (iv) granting related relief; and

the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and consideration of the Motion, the relief

requested therein, and the responses thereto being a core proceeding in accordance with 28

U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections, if

any, to the Motion having been duly noted in the record of the hearing on the Motion held before

the Court on January 20, 2015 (the "Sale Hearing"); and upon the record of the Sale Hearing,

and all other pleadings and proceedings in this case, including the Motion; and it appearing that

the relief requested in the Motion is in the best interests of the Debtors, their estates, their

creditors and all other parties in interest; and after due deliberation and sufficient cause

appearing therefor;

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[3]**

     A.    The findings and conclusions set forth herein constitute the Court's findings of

fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding pursuant to Bankruptcy Rule 9014.

---

[2] All capitalized terms used but not defined herein have the meaning ascribed to such terms in the Motion or, if not defined in the Motion, in the Agreement.
[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      The Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Assets to be sold, transferred or conveyed pursuant to the Agreement, and their respective estates pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      The statutory predicates for the relief sought in the Motion and the basis for the approvals and authorizations herein are (i) Bankruptcy Code §§ 102, 105, 363, 365, 1107 and 1108, (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014, and (iii) Local Rules 002-1(b), 6004-1 and 9006-1.

E.      On August 25, 2014 (the "Petition Date"), the Debtors commenced their respective cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have continued in possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

F.      As evidenced by the affidavits of service filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale and all transactions contemplated therein or in connection therewith, and all deadlines related thereto has been provided in accordance with Bankruptcy Code §§ 102(1) and 363(b), Bankruptcy Rules 2002,

6004, 9006, 9007, 9008 and 9014, the local rules of this Court, and the procedural due process requirements of the United States Constitution. The Debtors also gave due and proper notice of the assumption, sale, and assignment of each contract proposed to be assumed and assigned pursuant to the Agreement (the "Assumed Contracts") through the Cure Notices given to each non-debtor party under each such Assumed Contract. Such notice was good and sufficient and appropriate under the particular circumstances, and no other or further notice of the Motion, the Sale Hearing, the Sale, the transactions contemplated thereby, the assumption and assignment of the Assumed Contracts, or of the entry of this Order is necessary or shall be required. A reasonable opportunity to object or be heard regarding the requested relief has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

G.    Actual written notice has been afforded to all interested persons and entities, including, without limitation, (a) the Office of the United States Trustee; (b) counsel to the Creditors' Committee; (c) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure; (d) all parties that assert any liens, claims or interests in or with respect to the Assets and all parties who hold direct or indirect interests in such liens, including, but not limited to, the Agent, Silver Wheaton, Mohave County, Daselina, Trafigura, Fifth Third Bank; (e) all entities known to have expressed an interest in bidding on the Assets; (f) all counterparties to Assumed Contracts; (g) the United States Attorney's office; (h) all state attorneys general in states in which the Assets are located; (i) the Internal Revenue Service; (j) for each state in which the Assets are located, the applicable taxing authorities; and

4

(k) all interested environmental and other regulatory authorities in the states or smaller applicable jurisdictions in which the Debtors do business.

H.    The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Agreement, sell the Assets and assume and assign the Assumed Contracts under Bankruptcy Code §§ 363 and 365, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.  Such business reasons include, but are not limited to, the facts that (i) the Agreement and the Closing (as defined in the Agreement) will present the best opportunity to realize the value of the Assets; (ii) there is substantial risk of deterioration of the value of the Assets if the Sale is not consummated quickly; and (iii) the Agreement constitutes the highest and best offer for the Assets.

I.    As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing, a reasonable opportunity has been given to any interested party to make the highest and best offer for the Assets, and the offer of the Buyer, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and estates; and (iv) constitutes full and adequate consideration and reasonably equivalent value for the Assets.  In the circumstances, no further marketing or competitive sales process in respect of the Assets is required.

J.      The Buyer is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code.

K.      The Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind.  Neither the Debtors nor the Buyer has engaged in any conduct that would prevent the application of Bankruptcy Code § 363(m) or cause the application of or implicate Bankruptcy Code § 363(n) to the Agreement or to the consummation of the sale transaction and transfer of the Assets and the Assumed Contracts to the Buyer.  Specifically, the Buyer has not acted in a collusive manner with any person and the aggregate price paid by Buyer for the Assets was not controlled by any agreement with any other interested party.  The Buyer is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to all of the protections and immunities of Bankruptcy Code §363(m) with respect to all of the Assets.  There is no basis to avoid the sale of the Assets under Bankruptcy Code §363(n).

L.      The Debtors are authorized, have full corporate power and authority, and have taken all necessary corporate action necessary to:  (i) execute the Agreement and all other documents contemplated thereby; (ii) consummate the transactions contemplated by the Agreement, and (iii) comply in all respects with the terms of this Agreement.  No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate such transactions.

M.      The Debtors have advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Assets, as more fully set forth in the

6

Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Assets and to consummate the transactions contemplated by the Agreement. Notwithstanding any requirement for approval or consent by any person, the transfer of the Assets to the Buyer and the assumption and assignment of the Assumed Contracts is a legal, valid and effective transfer of the Assets and any Assumed Contracts.

N.    The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement and the provisions governing the limited circumstances when the Termination Fee and Expense Reimbursement would be payable to the Buyer, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates.

O.    Except as otherwise provided in the Agreement and with the exception of Permitted Liens and Assumed Liabilities, the Assets shall be sold free and clear of, and the Buyer shall not be responsible for: (i) all liens (statutory or otherwise), mortgages, pledges, security interests, charges, rights of first refusal, hypothecations, encumbrances, restrictive covenants, rights of offset or recoupment, leases or conditional sale arrangements (collectively, the "Liens"), (ii) all claims as defined in section 101(5) of the Bankruptcy Code, including all rights or causes of action (whether in law or in equity), obligations, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants and interests of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of the above-captioned cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively the "Claims"), and (iii) all debts, liabilities, obligations, contractual rights

7

and claims and labor, employment and pension claims, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively the "Interests"). To the extent Assets are sold free and clear of any Liens, Claims, and Interests, all such Liens, Claims, and Interests will attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing. For the avoidance of doubt, the Liens, Claims, and Interests include, and the Assets shall be sold free and clear of, any liens, claims or interests asserted by Mohave County on account of accrued and unpaid taxes or charges of any kind, including *ad valorem* taxes, and any other parties who assert liens, claims or interests with respect to the Assets, including but not limited to, the Agent, Silver Wheaton, Daselina, Trafigura and Fifth Third Bank.

P.   The transfer of the Assets to Buyer is a legal, valid and effective transfer of the Assets, and, except as may otherwise be provided in the Agreement, shall vest the Buyer with all right, title and interest of the Debtors to the Assets free and clear of any and all Liens, Claims, and Interests other than Permitted Liens and Assumed Liabilities. Except as specifically provided in the Agreement or this Order, the Buyer shall not assume or become liable for any Liens, Claims, or Interests, other than Permitted Liens and Assumed Liabilities, relating to the Assets being sold by the Debtors.

8

Q.    The Debtors may sell the Assets free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever, other than Permitted Liens and Assumed Liabilities, because, in each case, one or more of the standards set forth in Bankruptcy Code § 363(f) has been satisfied. Those holders of Liens, Claims, or Interests from which the Assets are to be sold free and clear (including any non-debtor parties to the Assumed Contracts) who did not object, or who withdrew their objections, to the sale of the Assets and the Motion are deemed to have consented pursuant to Bankruptcy Code § 363(f)(2). All objections to the Motion have been resolved or overruled. Those holders of Liens, Claims, or Interests (other than Permitted Liens or Assumed Liabilities) who did object fall within one or more of the other subsections of Bankruptcy Code § 363(f) and are adequately protected by having their Liens, Claims, or Interests, if any, attach to the proceeds of the sale of the Assets ultimately attributable to the property against or in which they claim or may claim any Liens, Claims, or Interests.

R.    Not selling the Assets free and clear of all Liens, Claims, and Interests (other than Permitted Liens and Assumed Liabilities) would adversely impact the Debtors' estates, and the sale of Assets other than one free and clear of all Liens, Claims, and Interests (other than Permitted Liens and Assumed Liabilities) would be of substantially less value to the Debtors' estates. The Buyer would not have entered into the Agreement and would not consummate the transactions contemplated thereby if the sale of the Assets to the Buyer were not free and clear of all Liens, Claims, and Interests (other than Permitted Liens and Assumed Liabilities).

S.    The Debtors and the Buyer have, to the extent necessary, satisfied the requirements of Bankruptcy Code § 365, including Bankruptcy Code §§ 365(b)(1)(A), (B) and

9

365(f), in connection with the sale and the assumption and assignment of the Assumed Contracts. The Buyer has demonstrated adequate assurance of future performance with respect to the Assumed Contracts pursuant to Bankruptcy Code § 365(b)(1)(C).  The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estates, their creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

T.    The Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary, or providing for the termination thereof upon assignment or the insolvency or commencement of the chapter 11 cases.  The Buyer, on behalf of the Debtors, has provided for the cures and/or other payments or actions required to for the Debtors to assume and assign the Assumed Contracts to the Buyer.  The Buyer has provided adequate assurance of its future performance under the Assumed Contracts.

U.    In the absence of a stay pending appeal, the Buyer is acting in good faith, pursuant to Bankruptcy Code § 363(m), in closing the transactions contemplated by the Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

V.    The Buyer's obligation to consummate the transactions contemplated in the Agreement is subject to the specific conditions outlined in that contract, including Court approval.  As of the date of entry of this Order, there is no known failure of any condition under

the Agreement to the Buyer's obligation to consummate the Sale that would entitle the Buyer not to consummate the Sale pursuant to the Agreement or to terminate the Agreement.

W.    The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Buyer and the Debtors, there is no common identity between the Debtors and the Buyer, there is no continuity of enterprise between the Debtors and the Buyer, the Buyer is not a mere continuation of the Debtors or their estates, and the Buyer does not constitute a successor to the Debtors or their estates.

X.    The sale of the Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan for the Debtors.  The sale does not constitute a *sub rosa* chapter 11 plan.

Y.    The total consideration provided by the Buyer for the Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Assets.  No other person or entity or group of entities has offered to purchase the Assets for greater economic value to the Debtors' estates than the Buyer.

Z.      Time is of the essence in consummating the sale.  In order to maximize the value of the Assets and preserve the viability of the business, it is essential that the sale of the Assets occur within the time constraints set forth in the Agreement.  Accordingly, there is cause to determine inapplicable the stays contemplated by Bankruptcy Rules 6004 and 6006.

AA.      Other than the Assumed Liabilities, and except as expressly provided for by the terms of the Agreement the Buyer shall have no obligations with respect to any Excluded Liabilities, shall acquire the Assets free and clear of the Excluded Liabilities to the extent they constitute a Lien, Claim, or Interest and are released by the Debtors with respect to such Excluded Liabilities.

BB.      The Debtors, in connection with offering products or services, do not have any consumer-related personally identifiable information and, therefore, the sale of the Assets may be approved pursuant to Bankruptcy Code § 363(b)(1)(A) without the appointment of a consumer privacy ombudsman as defined in Bankruptcy Code § 363(b)(1).

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The relief requested in the Motion is granted as set forth herein, subject to the terms and conditions contained herein.  The Motion complies with all aspects of Local Rule 6004-1.

2.      All objections, responses, and requests for continuance concerning the Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.  To the extent any such objection, response or request for continuance was not

12

otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.  Those parties who did not object, or who withdrew their objections, to the Motion, are deemed to have consented pursuant to Bankruptcy Code § 363(f)(2).

3.    Notice of the Sale Hearing was fair and equitable under the circumstances and complied with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004 and 6006.

## A.    <u>Approval of Sale</u>

4.    The sale of the Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), as modified or amended, and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

5.    The sale of the Assets and the consideration provided by the Buyer under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.    The Buyer is hereby granted and is entitled to all of the protections and immunities provided to a good faith buyer under Bankruptcy Code § 363(m), including with respect to the transfer of the Assumed Contracts as part of the sale of the Assets pursuant to Bankruptcy Code § 365 and this Order.

7.    Pursuant to Bankruptcy Code § 363(m), if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity and

13

enforceability of any transfer under the Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order and the Agreement, as the case may be.

8.      The Debtors are hereby authorized and directed to fully assume, perform under, consummate and implement the terms of the Agreement, together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and sale of the Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably necessary for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession any or all of the Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of this Court.

9.      The Debtors and each other person or entity having duties or responsibilities under the Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Agreement, to carry out all of the provisions of the Agreement and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement, and any related agreements; to take any and all actions contemplated by the

14

Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court.  Further, effective as of the Closing the Buyer, its successors and assigns, shall be designated and appointed the Debtors' true and lawful attorney and attorneys, with full power of substitution, in the Debtors' name and stead, its successors and assigns, to demand and receive any and all of the Assets, and from time to time institute and prosecute in the name of the Buyer, for the benefit of the Buyer, its successors and assigns, any and all proceedings at law, in equity, or otherwise, that the Buyer, its successors or assigns, may deem proper for the collection or reduction to possession of any of the Assets, and to do all acts and things with respect to the Assets that the Buyer, its successors and assigns, shall deem desirable.  All of the foregoing powers granted to the Buyer are coupled with an interest and are irrevocable by the Debtors.

10.     The secretary or any assistant secretary of the Debtors shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable).  The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions

15

contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Delaware, the State of Arizona and all other applicable business corporation, trust and other laws of the applicable governmental units, including for the change of the Debtors' corporate names, with respect to the implementation and consummation of the Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

11. Effective as of the Closing, (a) the sale of the Assets by the Debtors to the Buyer shall constitute a legal, valid and effective transfer of the Assets notwithstanding any requirement for approval or consent by any person and vests Buyer with all right, title and interest of the Debtors in and to the Assets, free and clear of all Liens, Claims, and Interests of any kind (other than the Permitted Liens), including any liens, claims or interests asserted by Mohave County on account of accrued and unpaid taxes or charges of any kind, including *ad valorem* taxes, and any other parties who assert liens, claims, or interests with respect to the Assets, including but not limited to, the Agent, Silver Wheaton, Daselina, Trafigura, and Fifth

16

Third Bank, pursuant to Bankruptcy Code § 363(f), and (b) the assumption of any Assumed

Liabilities by the Buyer constitutes a legal, valid and effective delegation of any Assumed

Liabilities to the Buyer and divests the Debtors of all liability with respect to any Assumed

Liabilities.

12.     The sale of the Assets is not subject to avoidance pursuant to

Bankruptcy Code § 363(n).

**B.     Transfer of Assets**

13.     Except to the extent specifically provided in the Agreement, upon the

Closing, the Debtors shall be, and hereby are, authorized and empowered, pursuant to

Bankruptcy Code §§ 105, 363(b) and 363(f), to sell the Assets to the Buyer.  The sale of the

Assets vests Buyer with all right, title and interest of the Debtors to the Assets free and clear of

any and all Liens, Claims, and Interests (other than the Permitted Liens and Assumed

Liabilities), with all such Liens, Claims, and Interests (other than the Permitted Liens) to attach

only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they

now have in or against the Assets, subject to all claims and defenses the Debtors may possess

with respect thereto.  The Motion or notice thereof shall be deemed to provide sufficient notice

as to the sale of the Assets free and clear of Liens, Claims, and Interests.  Following the Closing

Date, no holder of any Liens, Claims, and Interests (other than the Permitted Liens) in the Assets

shall have any basis to interfere with the Buyer's use and enjoyment of the Assets based on or

related to such Liens, Claims, and Interests, or any actions that the Debtors may take in their

chapter 11 cases and no person may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

14.    The provisions of this Order authorizing the sale of the Assets free and clear of Liens, Claims, and Interests, other than the Permitted Liens and the Assumed Liabilities, shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.  However, the Debtors and the Buyer, and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Buyer deem necessary or appropriate to implement and effectuate the terms of the Agreement and this Sale Order.

15.    To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing Date.

16.    All of the Debtors' interests in the Assets to be acquired by the Buyer under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Buyer.  Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets acquired by the Buyer under the Agreement and/or a bill

18

of sale or assignment transferring good and marketable, indefeasible title and interest in the Assets to the Buyer. All entities that are currently, or on the Closing may be, in possession of some or all of the Assets in which the Debtors hold an interest are hereby directed to surrender possession of the Assets to the Buyer on the Closing, unless the Buyer otherwise agrees.

17.      Except as expressly provided in or pursuant to the Agreement, the Buyer is not assuming and is not deemed to assume, and the Buyer shall not be, nor shall any affiliate of Buyer be, in any way liable for or responsible for, as a successor or otherwise, for any liabilities, debts or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Assets prior to the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Agreement, which liabilities, debts and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Buyer or any of its affiliates.

18.      Notwithstanding anything to the contrary in this Order or the Agreement, to the extent any of the Assets consist of an interest in a consumer credit transaction subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations), and if such interest is purchased under the Agreement, the Buyer shall remain subject to the claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as the

19

Buyer would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under section 363, as provided for in Bankruptcy Code § 363(o).

**C.**   **Assumed Contracts**

19.   Subject to the terms of the Agreement and the occurrence of the Closing Date, the assumption by the Debtors of the Assumed Contracts and the assignment of such agreements to the Buyer, as provided for or contemplated by the Agreement, be, and hereby is, authorized and approved pursuant to Bankruptcy Code §§ 363 and 365.

20.   The Assumed Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtors and assigned to the Buyer at the Closing, pursuant to Bankruptcy Code §§ 363 and 365, subject only to the making of all Cure Costs required to assume and assign the Assumed Contracts to the Buyer, and with non-debtor parties to such Assumed Contracts being without basis to assert against Buyer, among other things, defaults, breaches or claims of pecuniary losses existing as of the Closing or by reason of the Closing.

21.   Upon the Closing, in accordance with Bankruptcy Code §§ 363 and 365, the Buyer shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract.  The Debtors are authorized to take all actions reasonably necessary to effectuate the foregoing.

22.   Pursuant to Bankruptcy Code §§ 365(b)(I)(A) and (B), and except as otherwise provided in this Order, the Buyer, on behalf of the Debtors, shall promptly pay or cause to be paid to the parties to any Assumed Contracts the requisite cure amounts, if any, set forth in the Cure Notice served by the Debtors on each of the parties to the Assumed Contracts

(the "Cure Costs"), with respect to the assumption and assignment thereof. The Cure Costs are hereby fixed at the amounts set forth in the Cure Notice served by the Debtors, or the amounts determined on the record of the Sale Hearing, as the case may be, or as otherwise agreed to by the Debtors and non-debtor parties to the Assumed Contracts, and the non-debtor parties to the Assumed Contracts are forever bound by such Cure Costs and are hereby enjoined from taking any action against the Buyer or the Assets with respect to any claim for cure under any Assumed Contract.

23.      All defaults or other obligations under the Assumed Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code § 365(b)(2)) shall be deemed cured by payment of the Cure Costs and the non-debtor parties to such contracts shall be forever barred and estopped from asserting or claiming against the Debtors or the Buyer that any additional amounts are due or other defaults exist.

24.      Any provision in any Assumed Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Assumed Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Cost, if any. No sections or provisions of any Assumed Contract that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts shall have any force and effect with respect to the transactions contemplated by the Agreement and assignments authorized by this Order, and such provisions constitute unenforceable anti-

assignment provisions under Bankruptcy Code § 365(f) and/or are otherwise unenforceable under Bankruptcy Code § 365(e) and no assignment of any Assumed Contract pursuant to the terms of the Agreement in any respect constitutes a default under any Assumed Contract.  In the absence of objection, the non-debtor party to each Assumed Contract shall be deemed to have consented to such assignment under Bankruptcy Code § 365(c)(1)(B), and the Buyer shall enjoy all of the rights and benefits under each such Assumed Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

25.     The Buyer shall not be required to provide any further evidence of any adequate assurance to any counterparty of an Assumed Contract.

26.     The Debtors and their estates shall be relieved of any liability for any breach of any of the Assumed Contracts occurring from and after Closing, pursuant to and in accordance with Bankruptcy Code § 365(k).

27.     The non-debtor parties shall be prohibited from charging any rent acceleration, assignment fees, increases or other fees to the Buyer as a result of the assumption and assignment of the Assumed Contracts.

**D.     Additional Provisions**

28.     Section 6.3 of the Agreement is hereby approved as fair and reasonable and in the best interests of the Debtors, their creditors, and the Debtors' estates, and in the event of a Bankruptcy Termination Event, the Debtors shall be required to pay a Break-Up Fee and an Expense Reimbursement to the Buyer as set forth in the Agreement.

22

29.     Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

30.     To the extent permitted by Bankruptcy Code § 525, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of this chapter 11 cases or the consummation of the transaction contemplated by the Agreement.

31.     No provision of this Order, the Sale Motion, any related Sale documents or any other Order of this Court (collectively, "Documents") relieves the Debtors or the Buyer from the obligation to comply with the Communications Act of 1934, as amended, and the rules, regulations and orders promulgated thereunder by the Federal Communications Commission ("FCC") and, notwithstanding the Documents, no assignment of any rights and interests of the Debtors in any federal license or authorization issued by the FCC shall take place prior to the issuance of FCC regulatory approval for such assignment pursuant to the Communications Act of 1934, as amended, and the rules and regulations promulgated thereunder.  The FCC's rights and powers to take any action pursuant to its regulatory authority, including, but not limited to, imposing any regulatory conditions on such assignments and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority. Nothing in the Documents divests any tribunal, including but not limited to the FCC, of any jurisdiction it may have under any FCC law and any rules, regulations, and orders pertaining thereto.

23

32.    Nothing in this Order or the Agreement releases, nullifies, precludes, or enjoins the enforcement of any environmental liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Notwithstanding the foregoing sentence, nothing in this Order shall (i) be interpreted to deem the Buyer as the successor to the Debtors under any successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to the Closing or for liabilities relating to off-site disposal of wastes by the Debtors prior to the Closing; (ii) create for any governmental unit any substantive right that does not already exist under law; or (iii) be deemed or construed to be, an admission of liability by the Debtors. Nothing in this Order or the Asset Purchase Agreement authorizes transfer to the Buyer of any licenses, permits, registrations, or other governmental authorizations and approvals without the Buyer's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers. Nothing in this Order divests any tribunal of any jurisdiction it may have under environmental law or regulation.

33.    The Buyer has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Liabilities and as otherwise set forth in the Agreement, and the Buyer has not purchased any of the Excluded Assets. Consequently, all persons, governmental units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Liens, Claims, or Interests (other than Permitted Liens) based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Buyer or the Assets, including asserting any setoff, right of subrogation or

24

recoupment of any kind, to recover any Liens, Claims, and Interests (other than Permitted Liens) or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Agreement. All persons holding or asserting any interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens, Claims, and Interests or cause of action against the Buyer or the Assets for any liability associated with the Excluded Assets.

34.    The Buyer is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, transferee liability, derivative liability, vicarious liability or any other liability or responsibility of any kind or character for any Liens, Claims, or Interests against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Agreement, whether known or unknown as of the Closing, now existing or hereafter arising, fixed or contingent, asserted or unasserted, or liquidated or unliquidated, and the Motion contains sufficient notice of such limitation in accordance with Local Rule 6004-1.

35.    All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Assets to the Buyer in accordance with the Agreement and this Order. Except to the extent expressly included in the Assumed Liabilities or to enforce the Agreement or Permitted Liens, pursuant to Bankruptcy Code §§ 105 and 363, all persons and entities, including, but not limited to, the Debtors, the Creditors' Committee, all debt security holders, equity security holders, the

25

Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding Liens, Claims, or Interests of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Assets to the Buyer, shall be forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Liens, Claims, or Interests, whether by payment, setoff, or otherwise, directly or indirectly, against the Buyer or any affiliate, successor or assign thereof, or the Assets.  Further, neither the Buyer nor any of its affiliates, successors and assigns shall have, or incur any liability to, or be subject to any action by, the Debtors or any of their predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the Agreement and the entry into and consummation of the Sale.  However, for the avoidance of doubt, the foregoing shall not prevent the Debtors, their estates, successors or permitted assigns from pursuing claims, if any, against the Buyer and/or its successors and assigns in accordance with the terms of the Agreement and this Order.

36.    Subject to the terms of the Agreement, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Buyer, without further action or order of the Court; provided, however, that any such

DOCS_DE:197366.2 57302-002

waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements.

37.    The failure specifically to include any particular provisions of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Buyer that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

38.    To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, this Order shall govern and control.

39.    This Order and Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Buyer, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if this case is converted from Chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Assets.

40.    On January 13, 2015, Atlas Copco Customer Finance USA LLC ("Atlas Copco") filed its limited objection to the Motion [Docket No. 237] (the "Atlas Objection"). The Atlas Objection is resolved as follows:  In exchange for the sum of

27

$103,921.12 to be paid out of sale proceeds at closing, Atlas Copco has agreed to concurrently

convey Atlas Copco Drilling Rig, Model DM45, Serial No. 9350 to the Buyer.

41.    Other than the payment to Atlas Copco referred to in paragraph 40 of

this Order, no proceeds of sale shall be paid to any party without a further order of the court after

at least 20 days' written notice and an opportunity to object and be heard is given to all parties

claiming a lien in or right to be paid out of the proceeds of sale.

42.    ~~In response to the Statement Regarding Debtors' Motion for a Sale~~

Order, Request for Additional Adequate Protection and Reservation of Rights filed by Societe

Generale, as Administrative Agent for certain lenders on January 15, 2015 [Docket No.335],

Societe Generale is hereby granted a valid, binding, continuing, enforceable fully perfected, non-

avoidable additional and replacement first priority lien on and security interest in the proceeds of

sale to secure any diminution of the value of its collateral from and after January 7, 2015,

including through the use of cash collateral in which Societe Generale has an interest from and

after January 7, 2015.

43.    Nothing contained in the Agreement or this Order shall be construed to

impair or negate the need that upon the transfer of title to the real property, assignment of any

leaseholds on real property and/or assignment of any Government issued Permits or mining

permits, that any and all bonds issued by Lexon Insurance Co. and/or Bond Safeguard Insurance

Co. (the "Sureties") will be replaced or substituted within a commercially reasonable period

following Closing. Pending replacement and termination, all Backstop Collateral (as defined in

the Agreement) held by the Sureties shall remain with the Sureties as collateral for each of the

bonds until each and every bond is replaced and terminated and the Sureties shall not release any such Backstop Collateral to the Debtors.  If the Debtors receive any portion of the Backstop Collateral from the Sureties after Buyer has paid to the Debtors an amount equal to such Backstop Collateral on the Closing Date, then the Debtors shall immediately pay the amount of such Backstop Collateral to Buyer. To the extent there is any discrepancy between this paragraph and any provision of the Agreement or of this Order, this paragraph will remain controlling.

44.    The provisions of this Order are non-severable and mutually dependent.

45.    No bulk sales or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Sale, the Agreement, the Motion, and this Order.

46.    Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

47.    Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the Motion or notice thereof shall be deemed to provide sufficient notice of the Debtors' request for waiver of the otherwise applicable stay of the order.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyer are free to close

DOCS_DE:197366.2 57302-002

under the Agreement at any time, subject to the terms of the Agreement.  The Buyer has acted in "good faith," and, in the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Buyer close under the Agreement the Buyer shall be entitled to the protections and immunities of Bankruptcy Code § 363(m) as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

48.    This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order and the Agreement in all respects and to decide any disputes concerning this Order and the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Assets and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens.

Dated: _____, 2015

_____
The Honorable Kevin J. Carey
United States Bankruptcy Judge

30